**C.A. No. 12-56638**

# In the United States Court of Appeals for the Ninth Circuit

**JANE DOE No. 14,**
*Plaintiff-Appellant*,

v.

**INTERNET BRANDS, INC.,**
**d/b/a MODELMAYHEM.COM,**
*Defendant-Appellee,*

*On Appeal from the United States District Court for the*
*Central District of California, Case No. 12-cv-3626-JFW*
*The Honorable John F. Walter, United States District Judge*

## DEFENDANT-APPELLEE INTERNET BRANDS, INC.'S PETITION FOR REHEARING AND REHEARING EN BANC

Wendy Giberti
IGENERAL COUNSEL, P.C.
9595 Wilshire Boulevard, Suite 900
Beverly Hills, CA 90212
Telephone: (310) 300-4082
Facsimile: (310) 300-8401

Daniel P. Collins
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue, 35th Floor
Los Angeles, CA 90071-1560
Telephone: (213) 683-9100
Facsimile: (213) 687-3702

Jonathan H. Blavin
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, CA 94105-2907
Telephone: (415) 512-4000
Facsimile: (415) 512-4077

Attorneys for Defendant-Appellee Internet Brands, Inc.

# TABLE OF CONTENTS

**Page**

INTRODUCTION AND RULE 35(b) STATEMENT.................................................1

BACKGROUND ........................................................................................................3

    I.     Plaintiff's Complaint ........................................................................3

    II.    The District Court's Dismissal ..................................................4

    III.   The Panel's Opinion.........................................................................5

REASONS WHY REHEARING SHOULD BE GRANTED ................................7

    I.     The Panel Erred by Allowing Plaintiff Effectively to Amend Her Complaint on Appeal and Deciding an Unbriefed Issue Raised Thereby ......................................................................................7

    II.    The Panel Erred in Holding That Publication of Subscriber Content Is Insufficient to Trigger the CDA's Immunity.......................9

        A.    The Panel Overlooked That Internet Brands' Alleged Duty to Warn Rests Critically on Its Publishing of Plaintiff's Third-Party Content—Her Profile ............................9

        B.    The Panel's Decision Conflicts With Settled Case Law ..........13

        C.    The Panel's Decision Too Narrowly Construed the Policies Behind the CDA and Could Significantly Impact Website Operators..........................................................15

CONCLUSION ........................................................................................................18

Panel Opinion.............................................................................................. Addendum A

Statutory Addendum ................................................................................. Addendum B

# TABLE OF AUTHORITIES

**Page**

### FEDERAL CASES

*Barnes v. Yahoo!, Inc.*,
   570 F.3d 1096 (9th Cir. 2009) ..................................................*passim*

*Batzel v. Smith*,
   333 F.3d 1018 (9th Cir. 2003) ..................................................17

*Beckman v. Match.com*,
   2013 WL 2355512 (D. Nev. May 29, 2013),
   *appeal pending*, No. 13-16324 (9th Cir.) ...........................................14

*Carafano v. Metrosplash.com, Inc.*,
   339 F.3d 1119 (9th Cir. 2003) ..................................................15, 17

*Doe v. SexSearch.com*,
   502 F. Supp. 2d 719 (N.D. Ohio 2007),
   *aff'd on other grounds*, 551 F.3d 412 (6th Cir. 2008) ........................................14

*Ecological Rights Found. v. Pacific Gas & Elec. Co.*,
   713 F.3d 502 (9th Cir. 2013) ..................................................2, 8

*Fair Housing Council v. Roommates.com, LLC*,
   521 F.3d 1157 (9th Cir. 2008) ..................................................14

*Galvan v. Alaska Dep't of Corr.*,
   397 F.3d 1198 (9th Cir. 2005) ..................................................9

*George v. Morris*,
   736 F.3d 829 (9th Cir. 2013) ..................................................7

*Jane Doe v. MySpace, Inc.*,
   528 F.3d 413 (5th Cir. 2008) ..................................................5, 8, 13, 18

*Jane Doe v. MySpace, Inc.*,
   474 F. Supp. 2d 843 (W.D. Tex. 2007) ...........................................13

*Merritt v. Countrywide Fin. Corp.*,
   759 F.3d 1023 (9th Cir. 2014) ..................................................9

# TABLE OF AUTHORITIES
## (Cont'd)

**Page**

*United States v. Flanders*,
  752 F.3d 1317 (11th Cir. 2014) ........................................................................4

*Vincent v. Trend Western Tech. Corp.*,
  828 F.2d 563 (9th Cir. 1987) ........................................................................7, 8

### STATE CASES

*Julie Doe II v. MySpace, Inc.*,
  175 Cal. App. 4th 561 (2009) ...................................................................5, 8, 18

*Marois v. Royal Investigation & Patrol, Inc.*,
  162 Cal. App. 3d 193 (1984) ...........................................................................11

*McGettigan v. Bay Area Rapid Transit Dist.*,
  57 Cal. App. 4th 1011 (1997) ..........................................................................12

*Nally v. Grace Community Church*,
  47 Cal. 3d 278 (1988) ......................................................................................12

### FEDERAL STATUTES

47 U.S.C. § 230 .....................................................................................*passim*

### TREATISES

RESTATEMENT (SECOND) OF TORTS § 314A, cmt. c. ....................................10, 11, 12

RESTATEMENT (THIRD) OF TORTS:  LIAB.
  FOR PHYSICAL & EMOTIONAL HARM, § 40, cmt. f ............................................12

**INTRODUCTION AND RULE 35(b) STATEMENT**

In its published opinion, the panel erroneously reached—and incorrectly resolved—a critical issue concerning the scope of the protection that section 230 of the Communications Decency Act ("CDA"), 47 U.S.C. § 230, affords to website operators. The panel's opinion contravenes the language and policy of the CDA, conflicts with decisions of this and other courts, and creates potentially significant liabilities and burdens for a wide range of website operators. Rehearing and rehearing en banc should be granted.

Plaintiff Jane Doe, an aspiring model, created a profile on ModelMayhem.com, a networking site for models, make-up artists, stylists, and photographers run by Defendant-Appellee Internet Brands, Inc. She seeks to hold Internet Brands liable for a horrific crime perpetrated by two men who contacted her "through ModelMayhem.com" and arranged a "fake audition" at which she was raped. (Excerpts of Record ("ER") 13.) The district court dismissed the complaint as barred by the CDA, which preempts liability based on any "duty" that "derives from the defendant's status or conduct as a 'publisher or speaker'" of "content provided by another," *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1102 (9th Cir. 2009). (ER7-8.)

In reversing, the panel committed two crucial errors.

*First*, after Plaintiff at oral argument belatedly changed the complaint's

- 1 -

factual theory, the court decided an *unbriefed* issue raised by Plaintiff's improper de facto amendment. Both Internet Brands and the district court explicitly understood Plaintiff's allegation that the perpetrators contacted her "*through ModelMayhem.com*" (ER13, emphasis added) to mean that they communicated with her using the website. But at argument, Plaintiff contended for the first time that the men instead contacted her "outside the website," using contact information she had posted on her profile. The panel should not have allowed Plaintiff's belated shift, which contravenes the settled rule that a party "'may not try to amend [its] complaint through [its] arguments on appeal.'" *Ecological Rights Found. v. Pacific Gas & Elec. Co.*, 713 F.3d 502, 511 (9th Cir. 2013). And even if the change is allowed, the proper course would be to vacate the judgment and remand for the filing of an amended complaint and a new motion to dismiss.

*Second*, the panel incorrectly resolved the critical issue raised by Plaintiff's about-face, *i.e.*, whether the CDA barred Plaintiff's claim on the ground that it sought to hold Internet Brands liable for acting "as the 'publisher or speaker' of user content *by hosting [Plaintiff's] user profile*." (Op. 11, emphasis added.) In answering that question in the negative, the panel mistakenly focused only on *causation* and held that the but-for causal role played by Internet Brands' publication of Plaintiff's profile was not enough to trigger the CDA. (Op. 12.) The panel overlooked the fact that the separate element of "duty" here "derives

- 2 -

from the defendant's status or conduct as a 'publisher or speaker.'" *Barnes*, 570 F.3d at 1102. Specifically, Plaintiff's claim that she had a "special relationship" with Internet Brands giving rise to a duty to warn rests critically on the allegation that Internet Brands *published* Plaintiff's profile. The panel's erroneous holding conflicts with every decision addressing a comparable claim, contravenes the CDA's purposes, and threatens significantly to expand the potential scope of liability for website operators.

## BACKGROUND

### I. Plaintiff's Complaint

Plaintiff alleges that, in February 2011, she was contacted "through ModelMayhem.com" by a person fraudulently posing as a "talent scout." (ER13.) When Plaintiff arrived for a "fake audition" in Florida, the men conducting the "audition" (Lavont Flanders and Emerson Callum) surreptitiously drugged Plaintiff, after which Callum raped her while Flanders videotaped it. (ER13-14.) The men then marketed the videotape as pornography. (*Id*.)

Plaintiff alleges that, prior to this assault, Internet Brands was aware that Flanders and Callum had "used ModelMayhem.com to lure other users in this sexual battery scheme," and that it therefore had a duty to "warn Plaintiff[] and other ModelMayhem.com users." (ER11, 17.) Internet Brands' alleged knowledge arose *only* from its awareness, "no later than August 2010," that in

- 3 -

2007 Flanders and Callum had been "arrested and charged with luring and victimizing at least five women." (ER15.)[1] Plaintiff does not allege any facts showing that Internet Brands was aware, in 2011, that the men had brazenly resumed their criminal scheme *while* being prosecuted by the State of Florida. *United States v. Flanders*, 752 F.3d 1317, 1326 (11th Cir. 2014) (after their 2007 state arrests, the two men "were released on bond and continued their scheme until their [federal] arrests in 2011"). The state case was later dropped in favor of a federal prosecution that resulted in life sentences for both men. *Id*. at 1341-42.

## II. The District Court's Dismissal

In moving to dismiss, Internet Brands noted that it had to take as true Plaintiff's allegation that Flanders and Callum contacted her "through" ModelMayhem.com. (Clerk's Record ("CR") 12 at 1; ER13.) Parenthetically, however, Internet Brands explained that it believed this allegation to be false: its understanding of the true facts was that Plaintiff "post[ed] her personal contact information" on ModelMayhem.com—which the website cautioned against doing—and that she "was contacted directly by her assailants," who obtained her contact information from her profile. (CR26 at 2 n.1 & 5 n.11.) But accepting Plaintiff's allegation that "the communication occurred through the [w]ebsite" (*id*.

---

[1] Plaintiff alleges that, in August 2010, Internet Brands sued the prior owner of ModelMayhem.com, who failed to disclose Flanders' and Callum's pre-arrest crimes when the company was sold to Internet Brands in 2008. (ER15-16.)

at 5 n.11), Internet Brands argued that the complaint was plainly barred by section 230 under *Jane Doe v. MySpace, Inc.*, 528 F.3d 413 (5th Cir. 2008), and *Julie Doe II v. MySpace, Inc.*, 175 Cal. App. 4th 561 (2009). (CR12 at 3-5; CR26 at 2-5.) Plaintiff's opposition did not explicitly disavow this understanding of her complaint, arguing instead that, in her view, it was irrelevant what communications "Internet Brands may or may not have allowed or 'published' on its modelmayhem.com website." (CR22 at 11.)

The district court granted the motion to dismiss. (ER5.) The court confirmed its similar understanding of the complaint, noting there was no "dispute that the 'information content' was provided by another 'information content provider,'" *i.e.*, the perpetrators. (ER7; *see also* ER8 (Plaintiff's theory rested on "risks associated with content provided by third parties").) Plaintiff's theory was "barred by the CDA," the court held, because the alleged duty to warn "derives solely from [Internet Brands'] status as a publisher of that content." (ER8.)[2]

## III.   The Panel's Opinion

Plaintiff's Opening Brief ("POB") again argued that her failure-to-warn theory "has nothing to do with communications or content that Internet Brands may or may not have allowed or 'published' on its modelmayhem.com website."

---

[2] The district court did not address the parties' arguments as to whether California law imposed a duty to warn and whether Plaintiff had pleaded proximate causation.

(POB25.) Although Plaintiff also vaguely stated that "Flanders and Callum are not alleged to be *responsible* for any content on modelmayhem.com" (POB29, emphasis added), it was not until oral argument that Plaintiff first claimed that the men never communicated with Plaintiff *through* ModelMayhem.com. When asked whether Plaintiff responded to a posting by the perpetrators, Plaintiff's counsel stated that this was "not correct" and that Plaintiff instead contended that, after she "posted her information on the website," the "perps then contacted [her] outside the website, frankly." (http://www.ca9.uscourts.gov/media/view.php?pk_id= 0000012268 ("Oral arg.") at time-stamp 4:24-4:39.)

In its opinion, the panel stated that it understood Plaintiff's failure-to-warn claim as *not* resting upon any allegation "that Model Mayhem transmitted any potentially harmful messages between [Plaintiff] and Flanders or Callum" or that the men had otherwise "posted anything themselves." (Op. 8, 11.) Based on this understanding, the panel held that Plaintiff did not "seek to hold Internet Brands liable as a 'publisher or speaker' of content someone posted on the Model Mayhem website" (Op. 8), and that the CDA did not apply. (Op. 12-13.)

The panel also briefly addressed, and rejected, the view that the CDA preempted Plaintiff's claim on the ground that Internet Brands' alleged liability rested upon Defendant being deemed "the 'publisher or speaker' of user content by hosting *Jane Doe's* user profile." (Op. 11, emphasis added.)

- 6 -

## REASONS WHY REHEARING SHOULD BE GRANTED

**I.     The Panel Erred by Allowing Plaintiff Effectively to Amend Her Complaint on Appeal and Deciding an Unbriefed Issue Raised Thereby**

Plaintiff's belated effort to amend her factual allegations at oral argument should have been rejected, and the panel should have affirmed based on the parties' and the district court's clearly stated understanding of the complaint.  At the very least, the panel should have vacated the judgment and remanded for filing of an amended complaint and a new motion to dismiss.

In moving to dismiss, Internet Brands went out of its way to ensure that it correctly understood Plaintiff's allegations.  Because Plaintiff alleged that the perpetrators contacted her "through ModelMayhem.com" (ER13), Internet Brands understood Plaintiff to allege that they had communicated with her on the website—an allegation that Internet Brands *explicitly* said it believed to be false but was required to accept as true.  *See supra* at 4-5.  The district court likewise expressly construed the complaint as alleging that the perpetrators had communicated with Plaintiff *by posting content on ModelMayhem.com.  See supra* at 5.  Plaintiff never informed Internet Brands or the district court that they had misapprehended the complaint, and she therefore waived any such argument. *George v. Morris*, 736 F.3d 829, 837 (9th Cir. 2013).  Nor did Plaintiff seek leave to amend, either before or after the court's ruling.  *Vincent v. Trend Western Tech. Corp.*, 828 F.2d 563, 570 (9th Cir. 1987) (absent request to amend, plaintiff could

not raise new theory "for the first time on appeal"). By contending for the first time at appellate oral argument that the complaint's allegation of a contact "through ModelMayhem.com" had been misconstrued, Plaintiff improperly sought to amend the complaint on appeal. *Ecological Rights Found.*, 713 F.3d at 511.

Accordingly, the only argument Plaintiff properly preserved for appeal was her contention that, even assuming the perpetrators contacted her through ModelMayhem.com, her failure-to-warn theory escapes the immunity provided by the CDA. The district court correctly rejected this argument. (ER7-8.) If Plaintiff was contacted *through* ModelMayhem.com, then the risk that allegedly gave rise to Internet Brands' duty to warn is inescapably a "risk[] associated with content provided by third parties on its website," and Plaintiff therefore clearly seeks to hold Internet Brands liable for injuries arising from publishing such content. (ER8.) The CDA bars such a claim, as courts consistently have held. *Jane Doe*, 528 F.3d at 420; *Julie Doe*, 175 Cal. App. 4th at 573. Nothing in the panel's opinion suggests that, if the communications had occurred on the Defendant's website (as in *Jane Doe* and *Julie Doe*), the panel would have split with those decisions. Because the only theory Plaintiff preserved for appeal fails, the judgment should have been affirmed.

At the very least, if Plaintiff is allowed to shift positions, the proper course would be to vacate the judgment and remand for filing of an amended complaint

and a new motion to dismiss. As the panel recognized, Plaintiff's belated contention that the perpetrators never contacted her *through* ModelMayhem.com raises the distinct issue whether section 230 would nonetheless apply because Internet Brands was "act[ing] as the 'publisher or speaker' of user content *by hosting [Plaintiff's] user profile.*" (Op.11, emphasis added.) Internet Brands respectfully submits that the panel resolved that issue incorrectly, *see infra* at 9-18, but the critical threshold point is that the panel should not have decided this discrete issue, which was never briefed by the parties. The panel should have remanded the case rather than "'decide *ab initio* issues that the district court has not had an opportunity to consider[.]'" *Merritt v. Countrywide Fin. Corp.*, 759 F.3d 1023, 1040 (9th Cir. 2014); *see also Galvan v. Alaska Dep't of Corr.*, 397 F.3d 1198, 1204 (9th Cir. 2005) (reaching unbriefed issue raises fairness concerns).

## II. The Panel Erred in Holding That Publication of Subscriber Content Is Insufficient to Trigger the CDA's Immunity

The panel erred in holding that the CDA's immunity was *not* triggered by Plaintiff's reliance upon Internet Brands' status "as the 'publisher or speaker' of user content by hosting [Plaintiff's] user profile." (Op. 11.)

### A. The Panel Overlooked That Internet Brands' Alleged Duty to Warn Rests Critically on Its Publishing of Plaintiff's Third-Party Content—Her Profile

In holding that Internet Brands' publication of Plaintiff's third-party content did not trigger the CDA, the panel concluded that this "[p]ublishing activity" was

at best merely a "'but-for cause'" of Plaintiff's injuries. (Op. 11-12.) But in addressing only *causation*, the panel overlooked that the alleged *duty* here is unavoidably based on Internet Brands' status as publisher of Plaintiff's profile.

Section 230 states that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider," and it expressly preempts any state-law liability "that is inconsistent with this section." 47 U.S.C. § 230(c)(1), (e)(3). There is no dispute that Internet Brands is the "provider" of "an interactive computer service," or that Plaintiff's posting of her profile makes her an "information content provider." *Id.*, § 230(f)(2)-(3) (defining these terms). The only question, then, is "whether the duty that the plaintiff alleges the defendant violated derives from the defendant's status or conduct as a 'publisher or speaker.' If it does, section 230(c)(1) precludes liability." *Barnes*, 570 F.3d at 1102. Internet Brands denies that California law imposes a duty to warn here, but that issue is not before the Court. Plaintiff's briefs, however, make clear that the duty she alleges is one that derives from Internet Brands' status as the "publisher" of her profile. *Id.*

Plaintiff relies on California law "impos[ing] a duty to warn a potential victim of third party harm when a person has a 'special relationship to … the foreseeable victim[.]'" (Op. 6.) Plaintiff invokes Restatement section 314A (*see*

Plaintiff's Reply Brief ("PRB") 11 & n.4), which lists various special relationships (such as innkeeper-guest) and which also requires that "the risk of harm, or of further harm, arise[] in the course of that relation." RESTATEMENT (SECOND) OF TORTS § 314A, cmt. c. Thus, Internet Brands could conceivably have had a duty to warn only if (1) it had a "special relationship" with Plaintiff; and (2) the particular risk at issue arose within the scope of that relationship. Here, any argument concerning these two elements rests on Internet Brands' status as publisher of Plaintiff's content.

Plaintiff cites no precedent recognizing a "special relationship" in any comparable context and instead relies on an analogy to a "business possessor of land" and an "invitee" onto that land. (PRB11-12 & n.4.) *See* RESTATEMENT (SECOND), § 314A(3). The "land" at issue here, under this analogy, is "ModelMayhem.com," and Plaintiff was "invited" onto that site only through Internet Brands' agreement *to publish her user content*. More generally, any inquiry into whether a "special relationship" exists requires an examination of the nature of the relationship, including the services provided that allegedly give rise to the duty. *See*, *e.g.*, *Marois v. Royal Investigation & Patrol, Inc.*, 162 Cal. App. 3d 193, 200 (1984) ("By contracting with the business to provide security services, the security guard creates a special relationship [with] the business's customers."). Here, any argument that Internet Brands has a special relationship with Plaintiff

necessarily rests on the *content-publishing* services it provided to Plaintiff.[3]

Likewise, any argument that the risk at issue here arose within the *scope* of the alleged special relationship unavoidably rests on Internet Brands' status as publisher of Plaintiff's content. The scope of any special-relationship duty is bounded by the "confines of the relationship and does not extend to other risks." RESTATEMENT (THIRD) OF TORTS: LIAB. FOR PHYSICAL & EMOTIONAL HARM, § 40, cmt. f; *see also McGettigan v. Bay Area Rapid Transit Dist.*, 57 Cal. App. 4th 1011, 1018 (1997) (under § 314A, duty arises "only where the special relationship exists between the parties *and the risk of harm arises in the course of that relation*"). Here, the only thing that arguably ties the particular risk (assaults by persons such as Callum and Flanders) to Internet Brands' relationship with Plaintiff is the fact that Internet Brands *publishes* Plaintiff's content on the Internet, where it might then be seen by such perpetrators. Indeed, Plaintiff conceded at oral argument that, under her theory, it is the *publishing* of Plaintiff's profile which "create[d] the risk" of harm. (Oral arg. at time stamp 12:13-12:26.)

Because any argument that Internet Brands had a duty to Plaintiff ineluctably "derives from [its] status or conduct as a 'publisher or speaker,'" the CDA "precludes liability." *Barnes*, 570 F.3d at 1102.

---

[3] Contrary to what Plaintiff suggests (POB22-23), "knowledge of the danger[] is insufficient to create a legally cognizable special relationship[.]" *Nally v. Grace Community Church*, 47 Cal. 3d 278, 297 (1988).

- 12 -

**B.     The Panel's Decision Conflicts With Settled Case Law**

Every prior court to consider the issue has held that a website operator's publication of a user's profile or contact information—be it the victim's, or the perpetrator's—is sufficient to trigger the CDA's protections.

In *Jane Doe v. MySpace*, the plaintiffs (a minor and her mother) sued MySpace after the minor was assaulted by a man she met on the site and with whom she had shared her contact information.  Similar to Plaintiff here, the plaintiffs argued they were not attacking the defendant's publishing decisions, but only its failure to exclude minors and to keep predators from using the site to communicate with minors.  528 F.3d at 416-19.  Quoting the district court's decision, the Fifth Circuit agreed that the CDA applied:

> "[T]he underlying basis of Plaintiffs' claims is that, through postings on MySpace, [perpetrator] and [the minor] met and exchanged personal information which eventually led to an in-person meeting and the sexual assault….  If MySpace had not published communications between [the minor] and [perpetrator], including *personal contact information*, Plaintiffs assert they never would have met and the sexual assault never would have occurred.  No matter how artfully Plaintiffs seek to plead their claims, the Court views Plaintiffs' claims as directed toward MySpace in its publishing, editorial, and/or screening capacities."

*Id*. at 419-20 (quoting 474 F. Supp. 2d 843, 849 (W.D. Tex. 2007)) (emphasis added); *see also id*. at 420 (minor plaintiff "created the content" and "disclos[ed] personal information"); 474 F. Supp. 2d at 847 (holding that both plaintiff and perpetrator "qualify as 'information content providers'").

*Doe v. SexSearch.com*, 502 F. Supp. 2d 719, 727 (N.D. Ohio 2007), *aff'd on other grounds*, 551 F.3d 412 (6th Cir. 2008), reached a similar conclusion. There, the plaintiff met on the defendant's website, and later had sex with, an underage user who falsely had claimed to be an adult. 502 F. Supp. 2d at 722. After the plaintiff's arrest, he sued the website for, *inter alia*, failure to warn and negligent misrepresentation. *Id*. at 722-24. The district court dismissed the claims under the CDA:

> … Plaintiff is seeking to hold SexSearch liable for its publication of third-party content and harms flowing from the dissemination of that content. The underlying basis for Plaintiff's claim is that if SexSearch had *never published Jane Roe's profile*, Plaintiff and Jane Roe never would have met, and the sexual encounter never would have taken place.

*Id*. at 727 (emphasis added); *see also Beckman v. Match.com*, 2013 WL 2355512, at *5 (D. Nev. May 29, 2013), *appeal pending*, No. 13-16324 (9th Cir.) (rejecting failure-to-warn and other claims arising from assault by person plaintiff met on Match.com; the "conduct of publishing a user's profile is within the ambit of protection afforded under the CDA as these claims challenge Match.com's role as a publisher of third party content"); *cf. Fair Housing Council v. Roommates.com, LLC*, 521 F.3d 1157, 1173-74 (9th Cir. 2008) (en banc) (website's publication of member's potentially discriminatory comments on member's profile triggered CDA immunity).

By holding that the CDA does not bar Plaintiff's effort to hold Internet

- 14 -

Brands liable for harms flowing from its publication of Plaintiff's profile, the panel's opinion conflicts with settled case law.

**C.    The Panel's Decision Too Narrowly Construed the Policies Behind the CDA and Could Significantly Impact Website Operators**

The panel's decision also contravenes Congress's purposes in enacting section 230 in that it threatens to chill the free exchange of information on the Internet and could significantly increase potential liabilities and burdens for a wide range of website operators.

Congress recognized that liability-driven incentives for website operators to screen enormous volumes of third-party content before posting it could encourage widespread refusals to post user-generated content, thereby impairing the Internet's ability to serve as a "forum for a true diversity of political discourse, unique opportunities for cultural development, and myriad avenues for intellectual activity."  47 U.S.C. § 230(a)(3).  Accordingly, "to promote the free exchange of information and ideas over the Internet," Congress established a broad prohibition on liability arising from publication of another's content.  *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1122 (9th Cir. 2003); *see also* 47 U.S.C. § 230(b)(1)-(2) (CDA's stated purposes include "promot[ing] the continued development of the Internet" and "preserv[ing] the vibrant and competitive free market that presently exists for the Internet").

These policies are squarely implicated here.  If website operators must worry

- 15 -

about whether publication of other persons' content could give rise to duties to warn them about the dangers they might encounter by virtue of that content, many operators may choose to limit or even eliminate such content.  Moreover, by denying CDA immunity, the panel's decision leaves all social and professional networking sites extremely vulnerable as more users share contact information online.  Recent studies indicate that 20% of younger users post their cellphone number online, and nearly half of all Internet users report that their email addresses are posted online.[4]  Given that 25% of Internet users reported seeing someone physically threatened online; 8% experienced such threats themselves; and 8% reported being stalked online, the volume of threats that might give rise to a duty to warn is substantial.[5]  And if, as Plaintiff contends, the duty to warn continues for *years* after the perpetrator's arrest, the potential liability from profile-publication could be staggering.

The panel nonetheless held that the CDA's "core policy" is to allow websites freely "to edit or remove user generated content" and that this policy is inapplicable here because the implementation of a warning would not require any

---

[4] *Teens, Social Media, and Privacy*, Pew Research (May 21, 2013), http://www.pewinternet.org/2013/05/21/teens-social-media-and-privacy/; *Anonymity, Privacy, and Security Online*, Pew Research (Sept. 5, 2013), http://www.pewinternet.org/2013/09/05/anonymity-privacy-and-security-online/.

[5] *Online Harrassment*, Pew Research (Oct. 22, 2014), http://www.pewinternet.org/2014/10/22/online-harassment/.

- 16 -

such editing but only a posting by "Internet Brands itself." (Op. 9-10.) This overlooks that Internet Brands might have avoided triggering any asserted duty to warn here by *editing Plaintiff's profile* to delete her contact information, thereby limiting any initial contacts with ModelMayhem.com members to communications within the website. Moreover, the policies behind the CDA are implicated, not only in cases of compelled editing, but whenever the "*duty … derives from the defendant's status or conduct as a 'publisher or speaker'*" of "content provided by another," *Barnes*, 570 F.3d at 1102 (emphasis added). In any such case, the "posting of information … would be chilled" by imposing liability. *Batzel v. Smith*, 333 F.3d 1018, 1034 (9th Cir. 2003). And the "free exchange of information and ideas over the Internet," *Carafano*, 339 F.3d at 1122, would not be fostered by requiring that the posting of social-networking profiles be coupled with years' worth of specific warnings about innumerable dangers that users may face.

The panel held that the statute only sought to "'avoid the chilling effect upon Internet free speech'" that might arise from imposing liability for carrying "'potentially *harmful* messages,'" but that no such messages were at issue here. (Op. 10-11, emphasis added.) However, this narrow focus is misplaced, because nothing in the CDA suggests that its protection extends only to the publication of inherently harmful messages. As this Court explained in *Barnes*, although the "cause of action most frequently associated" with section 230 "is defamation," a

- 17 -

"'law's scope often differs from its genesis,'" and here the CDA's language also extends to claims "premised on the publication or speaking of what one might call 'information content.'" 570 F.3d at 1101. Indeed, courts have repeatedly held that section 230's immunity applies even if the communications at issue were *not* themselves harmful. *See*, *e.g.*, *Julie Doe*, 175 Cal. App. 4th at 573 (rejecting the "false distinction between tortious information and harmless communications," noting it was inconsistent with multiple cases); *see also Jane Doe*, 528 F.3d at 416, 421 (CDA applied notwithstanding that plaintiff and perpetrator "communicated offline" after plaintiff "provided her telephone number," and plaintiff was "'not complaining about any of the content that was transmitted between'" them). Accordingly, the panel erred in narrowly reading the policies behind the CDA and concluding that they did not apply here based on a false distinction between informational and harmful messages and on an incorrect belief that imposing liability on informational messages would not have the same chilling effect upon Internet free speech that the CDA sought to prevent.

## CONCLUSION

Rehearing and rehearing en banc should be granted.

- 18 -

- 19 -

DATE:  October 31, 2014

Respectfully submitted,

MUNGER, TOLLES & OLSON LLP

By:  ___/s/ Daniel P. Collins_____
         Daniel P. Collins

Attorneys for Defendant-Appellee
Internet Brands, Inc.

## CERTIFICATE OF COMPLIANCE

I certify, pursuant to Ninth Circuit Rules 35-4 and 40-1, that the attached

Petition for Rehearing and Rehearing En Banc is proportionally spaced, has a

typeface of 14 points, and contains 4,199 words, which is less than the 4,200 words

permitted by Ninth Circuit Rule 40-1(a).

Dated: October 31, 2014

                                        */s/ Daniel P. Collins*
                                        Daniel P. Collins